## SMITH *v.* HARVEY-GIVEN COMPANY.

No. 11545. FEBRUARY 10, 1937.

*Maddox & Griffin,* for plaintiff.

*Wright & Covington,* for defendant.

BECK, Presiding Justice. Mrs. Lottie Smith filed an equitable petition against Harvey-Given Company, a corporation engaged in the real-estate business, alleging that she owned and lived on certain described realty in the City of Rome; that E. P. Harvey was the president of the defendant company, and acted as its agent in dealing with the petitioner in the transactions complained of; that she owed certain taxes and assessments for paving, etc., aggregat-

ing $2700; that Harvey came to her and offered to sell the property; that during all of the transactions complained of he never intimated that he was acting for the defendant as buyer; that she accepted the offer of agency in full confidence that she was being represented as principal; and that Harvey requested, "so that there would be no doubt about his agency and right to sell the same, that she sign a writing which he prepared, and which petitioner has since discovered to be an option to sell said property to said defendant." Attached to the petition is an exhibit of the paper, an option in favor of Harvey-Given Company for a consideration of $1, and covering the property mentioned in her petition. It is copied in full hereinafter. Subsequently Harvey tendered to her deeds which she signed after Harvey told her he had sold the property, and he took the deeds away with him, petitioner thinking he was going to close the trade. She alleges, in that connection: "That petitioner can not read without the aid of glasses, and she did not have on her glasses at said time, and that she did not read said deeds or know their contents, but she shows that had she had her glasses and read the same that she would have signed them, because she was relying implicitly upon said Harvey, thinking that he was representing her in said transaction and depending upon his judgment." It appears that of the property deeded by her to Harvey-Given Company a part was sold to Standard Oil Company. That part she alleges is worth $4000; and the defendant still retains title to a part of the property which was not sold to the Standard Oil Company, worth $2000. The petitioner is in possession of all of the property. She prays for a recovery of the property which was not sold to the Standard Oil Company and the title to which is still in Harvey-Given Company; that an accounting be had with the defendant; and that she recover such sum as may be found to be due her. The defendant filed a demurrer, on the grounds that no cause of action was set forth in the petition; that no sufficient facts were alleged why the petitioner did not have full knowledge of the contents of the option; and that no grounds of fraud are alleged which would justify setting aside the conveyances made to the defendant, or to show why the petitioner did not have full knowledge of the contents of the papers signed by her; that the petition is defective, in that it fails to pray for a rescission and cancellation of the deeds or contracts; that it does

not affirmatively appear whether the petition is an action for fraud and deceit or an action for cancellation and rescission; and that the suit is duplicitous. The court sustained the demurrer. That judgment was reversed. *Smith* v. *Harvey-Given Co.,* 182 *Ga.* 410 (185 S. E. 793). On the trial the court directed a nonsuit, and the petitioner excepted.

It is manifest from a consideration of the petition in this case that the plaintiff is relying upon the theory that she was induced to sign an instrument which created an agency, and under the terms of which the defendant was authorized to sell the property for her as her agent; and it was necessary for her to establish this theory in order to maintain her suit. It is manifest that her contention that the defendant was acting in the capacity of her agent for the sale of the property is not the true theory deducible from the petition. The contract was in the following language:

"Georgia, Floyd County. In consideration of $1.00 in hand paid, receipt of which is hereby acknowledged, I hereby option to Harvey-Given Company, or its assigns, for thirty days, the following described property: Lots 9, 10, 11, 12, 13, 14, 15, 16, and 17, and all title and interest that I may have to Cooperage Street, all located in the Sixth Ward of the City of Rome, Floyd County, Georgia, said lots, numbers, and street being as shown on Block 334-A of the plat made by the city tax-assessors in August, 1930, said property having a frontage of three hundred fifty-three and five-tenths feet, more or less, on North Broad Street and extending back in a southeasterly direction to the right of way of the Southern Railway Company. Should Harvey-Given Company exercise its rights under this option, the consideration agreed upon for said property is that they are to pay the entire balance due by me for street-paving on the block designated as 334-A on the city tax-assessors' plat, also the entire balance due by me for curb and gutter on said block. Also two-years taxes, both city and state and county, due by me, said taxes aggregating in the neighborhood of $300, and the purchaser is to pay all taxes on the property covered by this option for the year 1934. I reserve and agree to move all buildings and building material now on said property, same to be moved at any time required by the purchaser. I agree to execute a clear warranty deed upon compliance with the terms hereinabove named. The property covered by this option being

lots numbers 1, 2, 3, 4, 5, 6, 7, 8, 9 as shown on the W. A. and Mrs. Martha C. Smith subdivision, Plat Book 1, page 87, Cooperage St. lying along the southwest side of lot No. 1. Witness my hand and seal this 6th day of April, 1934." Signed by the petitioner, and attested by two witnesses, one of whom was a notary public.

The instrument is not of doubtful construction. It is manifest that it created an option. In part it reads: "I hereby option to Harvey-Given Company, or its assigns, for thirty days, the following described property." Then follows a description of the property in question. The option was renewed from time to time, and there is no suggestion that it was changed. There is no question that the deeds which Mrs. Smith executed were in accordance with the terms of the option. No fiduciary relation existed between Mrs. Smith and the defendant. She testified: "Before this transaction the main dealings I had with Mr. Harvey was buying property from him. He was not my agent in buying the property for me. . . I never employed him to work for me in my life as my agent. . . I didn't know Mr. Harvey personally, I just met him when he came out to see about the property. . . Mr. Harvey never discussed agency at all; it just seems he appeared to us as a friend, and he wanted to help us." There is no question, under the evidence, that she read the option contract before she signed it. That appears from her pleadings and from her testimony. Paragraph 11 of the petition reads as follows: "That had petitioner understood the legal purport thereof [the option contract], she would not have signed the same, but having such confidence in the said Harvey she signed any paper he handed to her." On the trial she testified: "The first time he came out he took the option then; it seems he was prepared, and I signed a paper at that time. I read it at that time. There wasn't any one else present except Mr. Harvey, Mr. Smith, and myself. . . After that I signed a paper again. I just don't know how many times, from month to month, this option was renewed. He paid me one dollar each time. . . He said he had a hard time selling, and wanted to renew the option; and I did each time. There was not any question in my mind at that time of distrust of Mr. Harvey at all. I believed everything he said at the time." Referring to the transaction which took place about November 21, 1934,

when she executed deeds to the property, she alleged: "That petitioner in good faith thought she was signing and executing deeds to the purchasers of said property, and had no knowledge that the deeds she signed were conveying the property to Harvey-Given Company until on or about March 9th, 1935." Her husband, who was present when the option was signed, testified: "At the time he [Harvey] took the option he said it was just a little option to show—I don't know just exactly what he did say, I couldn't say the wording of it—just a little option to show he had the right to sell it, or something, I don't remember exactly. That is the effect of what he said. I don't remember the exact words. Mrs. Smith signed the option. She was there at first when he drove up in the car, and heard what was said."

When the case was previously before this court it was held error for the court to sustain a general demurrer to the petition. Counsel for the defendant argued that the court was under a misapprehension as to what was alleged in the petition as to Mrs. Smith having read the option contract. Whether or not it be true that this court was under a misapprehension of the facts alleged in rendering its judgment reversing the judgment on the theory that Mrs. Smith did not read the option, the evidence clearly brings out the fact, as appears from what is quoted above, that she did read it, knew its contents, knew that it was an option; and the execution of the deeds to which the defendant was entitled under the terms of this option put the title to the property in question here in the defendant. The petitioner was not entitled to have the defendant treated merely as her agent, or to recover the land which was conveyed by her deeds; nor is she entitled to a judgment for any sum of money. The court did not err in granting a nonsuit.

*Judgment affirmed. All the Justices concur, except Russell, Chief Justice, who dissents.*